UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

QUANTUM SAIL DESIGN GROUP, LLC,

       Plaintiff,

v.                                Case No. 1:13-CV-879

JANNIE REUVERS SAILS, LTD,
LEADING EDGE SAILMAKERS, LTD,       HON. GORDON J. QUIST
SAIL DESIGN COMPANY, ULLMAN
SAILS, INTERNATIONAL, INC.,
and JANNIE REUVERS,

       Defendants.

_____/

## OPINION

Plaintiff, Quantum Sail Design Group, LLC (Quantum), has sued Defendants, Jannie

Reuvers Sails, Ltd. (JRS), Leading Edge Sailmakers, Ltd. (LES), Sail Design Company (SDC),

Ullman Sails International, Inc. (USI), and Jannie Reuvers, alleging various claims relating to, or

arising out of, a 2009 International Affiliate Licensee Agreement and a 2009 Trade Secret License

Agreement between Quantum and JRS.  Defendant JRS concedes that this Court has personal

jurisdiction over it, as JRS contractually submitted to jurisdiction in this district in the 2009

International Affiliates Licensee Agreement.  (Compl. ¶ 12 (quoting 2009 International Affiliates

License Agreement, ¶ 17B; Defs.' Br. Supp. Mot. to Dismiss at 12).)  However, Defendants LES,

SDC, USI, and Reuvers contest personal jurisdiction in this Court and have filed a motion to dismiss

on that basis.

Based on its review of the materials the parties have filed in support of, and in opposition

to, Defendants' motion to dismiss for lack of personal jurisdiction, and for the reasons set forth

below, the Court will grant the motion with regard to Defendant USI but will allow Quantum jurisdictional discovery with regard to Defendants Reuvers, LES, and SDC and defer ruling on that portion of the motion pending the completion of such discovery.

## I. BACKGROUND

Quantum is a Maryland limited liability company with its principal place of business in Traverse City, Michigan.[1]  (Compl. ¶ 1.)  Defendants JRS, LES, and SDC are foreign entities located in Cape Town, South Africa.  (*Id.* ¶¶ 2–4.)  Defendant USI is a California corporation with its principal offices in California.  (*Id.* ¶ 5.)  Defendant Reuvers is a citizen of South Africa and resides in Cape Town.  (1st Reuvers Aff. ¶ 2, Defs.' Br. Supp. Ex. A.)  Reuvers founded and co-owns JRS, SDC, and LES.  (*Id.* ¶ 3; 2d Reuvers Aff. ¶ 3, Defs.' Br. Supp. Ex. B.)

Quantum alleges that it is a top, if not the top, manufacturer of sails, including technologically-advanced, custom-made membrane cruising sails used by top racing yachts. (Compl. ¶¶ 24–28.)  Quantum "spent tens of millions of dollars over the past two decades on ensuring that its sails would be first [among the competition]."  (*Id.* ¶ 23.)  Quantum currently has more than 60 sales and service outlets throughout the world that operate as independent lofts.  (*Id.* ¶ 33.)

---

[1] It appears that in alleging its principal place of business, Quantum believed that it was required to do so in order to establish diversity for purposes of 28 U.S.C. § 1332(a).  Because Quantum is a limited liability company, however, it cannot establish its citizenship by alleging its state of creation and principal place of business.  For purposes of diversity jurisdiction, a corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  On the other hand, the citizenship of a limited liability company, such as Quantum, is the citizenship of each member. *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009).  Therefore, Quantum's allegations are insufficient to establish diversity jurisdiction because Quantum does not allege the citizenship of each of its members.  Although the Court's diversity jurisdiction remains in question, the Court has jurisdiction under 28 U.S.C. § 1331 because Count IV alleges a claim for trademark infringement, unfair competition, and/or false designation of origin under the Lanham Act, 15 U.S.C. § 1051 *et seq.*

In January 2005, Quantum licensed JRS to manufacture and sell membrane sails pursuant to an International Affiliate Licensee Agreement dated January 1, 2005.  The parties subsequently entered into a Trade Secret License Agreement dated October 20, 2006.  In furtherance of those agreements, Quantum advised JRS regarding the proper equipment to buy, trained JRS personnel to use the equipment and certain proprietary software for designing and producing membrane sails, provided JRS specifications for building a custom-made laminator, and provided JRS contacts for purchasing raw materials.  (*Id.* ¶ 49.)

In January 2009, Quantum and JRS executed a new Trade Secret License Agreement and a new International Affiliates Licensee Agreement (collectively the 2009 Agreements).  On January 8, 2013, Quantum announced that it had entered into an agreement with Dimension Polyant to purchase Dimension Polyant's Sri Lanka sailmaking facility.  (*Id.* ¶ 84.)  Less than two weeks later, JRS downloaded files required to manufacture certain popular Quantum membrane sails that had never before been used in South Africa.  (*Id.* ¶¶ 85–86.)  In March 2013, JRS notified Quantum that it was terminating its relationship in ninety days.  A few months later, in June 2013, JRS and USI—a competitor of Quantum—announced they had joined forces to form a partnership, and touted that JRS brought a state-of-the-art membrane sail manufacturing facility to the relationship and would continue to provide the same high quality sail design and construction standards that its customers had come to know and expect.  (*Id.* ¶¶ 88–96.)

Quantum alleges that JRS could not continue to manufacture high-quality membrane sails without the theft of Quantum's trade secrets, and that USI has improperly benefitted from such theft by producing and selling membrane sails using Quantum's trade secrets.  (*Id.* ¶¶ 92, 103–06, 219–21.)  Quantum further alleges that JRS breached the 2009 International Affiliates License Agreement by, among other things, selling Quantum sails directly to other Quantum affiliates or

3

customers outside of JRS's defined territory of South Africa and failing to pay royalties to Quantum. (*Id.* ¶¶ 55–68, 150–55.)  Quantum alleges five claims in its complaint.  Counts I and II allege claims against JRS for breach of the 2009 International Affiliates Licensee Agreement and breach of the 2009 Trade Secret License Agreement.  Count III alleges a claim against all Defendants for violation of the Michigan Uniform Trade Secrets Act.  Count IV alleges a claim against JRS and USI for trademark infringement, unfair competition, and/or false designation of origin.  Finally, Count V alleges a claim for statutory theft, embezzlement, and/or conversion against JRS, Reuvers, and USI.

## II.  MOTION STANDARD

The plaintiff bears the burden of showing that jurisdiction exists.  *Int'l Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997).  "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleading but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction."  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  As the Sixth Circuit has explained, a district court has three procedural alternatives available to it in deciding a challenge to personal jurisdiction.  "If it decides that the motion can be ruled on before trial, the court may determine the motion on the basis of the affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion."  *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (internal quotation marks omitted).  When a district court elects to decide a jurisdictional motion without an evidentiary hearing, the plaintiff need only make out a prima facie showing of personal jurisdiction.  *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998) (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)).  In such case, the court does not consider the defendant's factual assertions that conflict with those offered by the plaintiff, and

must construe the pleadings and affidavits in the light most favorable to the plaintiff.[2]  *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).  However, the court may consider the defendant's undisputed factual assertions.  *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012).

## III. DISCUSSION

A federal court may exercise personal jurisdiction over an out-of-state defendant only if the defendant has "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 C. St. 154, 158 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 343 (1940)).  Personal jurisdiction may be of two types: "general jurisdiction, where the defendant has continuous and systematic contact with the forum state, or limited jurisdiction, where the subject matter of the lawsuit is related to the defendant's contacts with the forum state." *Walker Motorsport, Inc. v. Henry Motorsport, Inc.*, No. 95-2250, 1997 WL 148801, at *2 (6th Cir. Mar. 31, 1997) (per curiam) (internal citation and quotation marks omitted).  Assessing the existence of jurisdiction involves a two-part process: "(1) first, the court must determine whether any of Michigan's relevant long-arm statutes authorize the exercise of jurisdiction of Defendants; and, if so, (2) the court must determine whether exercise of that jurisdiction comports with constitutional due process." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007).

A defendant has sufficient minimum contacts with the forum state where its "conduct and connection with the forum state are such that he would reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct 559, 567 (1980).

---

[2] When a district court exercises its discretion to hold a pretrial evidentiary hearing, the plaintiff must satisfy the preponderance-of-the-evidence standard.  *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012).

In deciding whether the exercise of personal jurisdiction comports with due process, the Sixth Circuit applies the following three-part test:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

## A.    Defendant Reuvers

Quantum's sole allegation in its complaint regarding personal jurisdiction over Defendant Reuvers is that "[t]his Court has specific jurisdiction over Defendant Jannie Reuvers because he came to Traverse City, Michigan several times to negotiate with Quantum the terms of their business relationship." (Compl. ¶ 13.) Quantum does not allege, as it does with Defendants LES, SDC, and USI, an alter ego theory of personal jurisdiction.

In the first of his two affidavits submitted in support of Defendants' motion, Reuvers states that he is a full-time resident of Cape Town, South Africa and a South African Citizen. (1st Reuvers Aff. ¶ 2.) Reuvers further states that he does not maintain a residence in the United States and has visited Michigan only on one occasion, October 14, 2012, when he traveled to Traverse City, Michigan on behalf of JRS for the purpose of discussing a sale of JRS to Quantum. (*Id.* ¶¶ 2, 11.) In its response, Quantum offers no evidence to refute Reuvers' assertion that he has been to Michigan only once. In fact, Quantum offers no argument at all that this single trip to Michigan satisfies Michigan's long-arm statute applicable to individuals, *see* M.C.L. § 600.705, or that the single trip would comport with due process. This failure, alone, demonstrates that Quantum has not met its burden with regard to Defendant Reuvers. Moreover, even if Quantum had addressed

6

jurisdiction over Reuvers, the Court would nonetheless conclude that it lacks personal jurisdiction

because Quantum could not demonstrate the second requirement of the due process analysis—that

"[t]he defendant's contacts with the forum state must relate to the operative facts and nature of the

controversy." *Cmty. Trust Bancorp, Inc. v. Cmty. Trust Fin. Corp.*, 392 F.3d 469, 472 (6th Cir.

2012) (citing *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)).  Reuvers' trip to Michigan to

discuss a potential sale of JRS bears no relationship to the operative facts of Quantum's claims.[3]

## B.    Defendants LES and SDC

Quantum's sole argument regarding personal jurisdiction over Defendants LES and SDC is

that they are subject to personal jurisdiction under an alter ego theory.  In *Estate of Thomson ex rel.*

*Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357 (6th Cir. 2008), the Sixth

Circuit explained that

> federal courts have consistently acknowledged that it is compatible with due process
> for a court to exercise personal jurisdiction over an individual or a corporation that
> would not ordinarily be subject to personal jurisdiction in that court when the
> individual or corporation is an alter ego or successor of a corporation that would be
> subject to personal jurisdiction in that court.

*Id.* at 362 (quoting *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002)).

> Facts tending to show the existence of an alter ego relationship include if the parent
> and subsidiary share principal offices, if they share board members or executives, if
> all of the parent's revenue comes from the subsidiary's sales, if all capital for the
> subsidiary is provided by the parent, if the subsidiary purchases supplies exclusively
> from the parent, if the subsidiary is seriously undercapitalized, if the parent regularly
> provided gratuitous services to the subsidiary, if the parent handled the subsidiary's
> payroll, if the parent directed the policies and decisions of the subsidiary, and if the
> parent considered the subsidiary's project to be its own.

---

[3]Defendants contend that Reuvers' sole trip to Michigan also cannot serve as a basis for jurisdiction over Reuvers because Reuvers was acting in his capacity as an officer of JRS.  *See Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974).  Although the Court has concluded that it lacks personal jurisdiction for other reasons, this argument would not necessarily carry the day for Reuvers because Reuvers was an owner of JRS, and it is just as likely that any discussions he engaged in regarding the sale of JRS would have been undertaken in his personal capacity.

7

*Conley v. MLT, Inc.*, No. 11-11205, 2012 WL 1893509, at *3 (E.D. Mich. May 23, 2012) (quoting

*United Ins. Grp. Agency, Inc. v. Patterson*, No. 299631, at *2 (Mich. Ct. App. Oct. 25, 2011) (per

curiam) (citing *Seasword v. Hilti, Ind.*, 449 Mich. 542, 548 n.10, 537 N.W.2d 221, 224 n. 10

(1995)).[4] In addition, the Sixth Circuit has identified the following factors that may bear on the

application of the alter-ego theory of personal jurisdiction:

> (1) sharing the same employees and corporate officers; (2) engaging in the same
> business enterprise; (3) having the same address and phone lines; (4) using the same
> assets; (5) completing the same jobs; (6) not maintaining separate books, tax returns
> and financial statements; and (7) exerting control over the daily affairs of another
> corporation.

*Estate of Thompson*, 545 F.3d at 362–63.

In support of dismissing LES, Defendants state that LES is a marketing firm that has not

conducted business since February 2004; operated wholly independently of JRS; maintained its own

bylaws, records, and bank accounts; and closed its bank accounts in July 2012. (2d Reuvers Aff.

¶¶ 3, 5–8.) Reuvers is a co-owner of LES. (*Id.* ¶ 3.) With regard to SDC, Defendants represent that

it is a real estate holding company that operates independently of JRS and maintains its own bylaws,

financial records, facilities, and bank accounts. (*Id.* ¶¶ 3, 9.) Reuvers is also a co-owner of SDC.

(*Id.* ¶ 3.) Finally, Defendants assert that neither SDC nor LES manufacture products. (*Id.* ¶ 16.)

In response, Quantum cites an email from Reuvers to Richard Franks of Hyde Sails dated August

24, 2012, containing the following statement at the end of a price quote: "All sails remain the

property of Leading Edge Sailmakers until paid in full." (Pl.'s Resp. Br. Ex. B.) Quantum contends

that this email shows that, contrary to Defendants' assertion, LES remains in business and has not

---

[4]In their reply, citing a Second Circuit case and decisions from district courts in California and New York, Defendants assert that Quantum erroneously relies on Michigan law for its alter ego argument. However, the Sixth Circuit has held that "[w]hen the success of a state law claim brought in federal court under diversity jurisdiction is dependent on piercing the corporate veil, this question of substantive law is governed by the law of the state in which the federal court sits." *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir. 2007) (citation omitted).

ceased business.  As for SDC, Quantum argues that in light of its other evidence refuting Defendants' evidence, there is sufficient reason to question Defendants' assertion that SDC is simply a real estate holding company.

Even crediting Quantum's evidence and argument, Quantum fails to make a prima facie showing of personal jurisdiction.  Quantum asserts that LES and SDC are alter egos of JRS, but whether LES remains in business and actually sells sails or whether SDC is actually a property investment company are not particularly relevant to whether those entities are alter egos of JRS.  In fact, Quantum fails to show a direct parent-subsidiary relationship between JRS, on the one hand, and LES and SDC on the other.  In short, Quantum offers nothing more than the conclusory assertion in its complaint that LES and SDC are alter egos of JRS.  *See Simsa v. Gehring L.P.*, No. 05-CV-72159-DT, 2006 WL 467914, at *4 (E.D. Mich. Feb. 24, 2006) ("Conclusory allegations of an alter ego relationship . . . are not sufficient to survive a motion to dismiss.") (citing *Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 905 (1st Cir. 1980)).

## C.    Defendant USI

Quantum asserts two bases upon which this Court may exercise jurisdiction.  First, it alleges that USI does business in Michigan.  Second, it alleges that USI is an alter ego of JRS or Reuvers.  Neither assertion suffices.

According to Defendants' evidence, USI is a California company headquartered in Newport Beach, California.  (Ullman Decl. ¶ 2, Defs.' Br. Supp. Ex. C.) USI is a licensing company and does not sell sails.  (*Id.* ¶ 10.)  USI promotes its brand through a network of independently owned and operated lofts, which are essentially sales offices and production facilities.  (*Id.* ¶ 4.)  USI has not had a licensed loft in Michigan since 1985.  USI has no employees, offices, or assets in Michigan. (*Id.* ¶¶ 3, 8.)  In addition, USI is a separate legal entity from JRS, with its own officers, directors,

9

owners, financial assets and records, employees, and equipment. (*Id.* ¶ 11.) Finally, David Ullman, USI's president, avers that Reuvers has never personally purchased any interest in USI. (*Id.* ¶ 13.)

With regard to its claim that USI does business in Michigan, Quantum's sole evidentiary basis is a screenshot of USI's website, which contains a number of boxes for a user to complete with contact information for the purpose of requesting a quote. (Pl.'s Resp. Ex. H.) Quantum notes that a Michigan resident may request a quote through USI's website. This evidence, however, does not refute USI's assertion that it has no contacts with Michigan. Specifically, it provides no basis to refute USI's evidence that it does not actually sell any products. Moreover, a defendant's interactive website which simply provides information about a company and its products cannot, by itself, support personal jurisdiction. As one court has observed:

> To put the principle broadly, the mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum.
>
> Something more is necessary, such as interactive features which allow the successful online ordering of the defendant's products. The mere existence of a website does not show that a defendant is directing its business activities towards every forum where the website is visible; as well, given the omnipresence of Internet websites today, allowing personal jurisdiction to be premised on such a contact alone would "eviscerate" the limits on a state's jurisdiction over out-of-state or foreign defendants.

*McBee v. Delica Co.*, 417 F.3d 107, 124 (1st Cir. 2005) (citations omitted); *see also Daimler AG v. Shuanghuan Auto. Co.*, No. 2:11-cv-13588, 2013 WL 2250213, at *5 (E.D. Mich. May 22, 2013) ("Regardless of whether Des Moines Motors' conduct qualifies as a tort committed in Michigan, the website, standing along, cannot satisfy due process."); *Impulsaria, LLC v. United Dist. Grp., LLC*, No. 1:11-CV-120, 2012 WL 4341058, at *3 (W.D. Mich. Sept. 20, 2012) ("The district courts in this Circuit have routinely held that the mere maintenance of an interactive, commercial website, accessible from anywhere, without more, cannot constitute purposeful availment.").

10

As for its alter ego theory, Quantum cites evidence, including a USI press release, a statement from JRS's Facebook page, and a USI announcement, showing that JRS or Reuvers purchased USI.  Considering this evidence in a light most favorable to Quantum, it fails to support Quantum's alter ego theory.  First, even assuming that JRS or Reuvers, personally, has an ownership interest in USI, that fact alone does not suffice to establish alter ego status.  *See Dean v. Motel Operating L.P.*, 134 F.3d 1269, 1273–74 (6th Cir. 1998) ("Although Accor does have a controlling interest in Motel 6 Operating, a company does not purposefully avail itself merely by owning all or some of a corporation subject to jurisdiction.").  In other words, none of Quantum's evidence shows, or even suggests, that USI is an alter ego of JRS.  More importantly, the facts, as Quantum alleges them, are at odds with an alter ego theory of personal jurisdiction because Quantum is attempting impute the controlling entity's contacts to the controlled subsidiary.  As the Tenth Circuit has explained:

> Jurisdiction over any entity, if it exists, must arise out of the entity's contacts with the forum.  When one defendant completely controls another, the latter's contacts with the forum may fairly be imputed to the former. . . . The obverse of that situation is one in which the individual alleged to dominate the corporation has no contacts with the forum, but the alter ego corporation has sufficient contacts.  In these cases, courts have sometimes attributed the corporation's contacts with the forum state to the individual for jurisdictional purposes.  In such situations, attribution of contacts to the individual defendant merely reflects the reality that, although the contacts were ostensibly those of the corporation, the true actor was the individual.  The same situation obtains in those cases holding a corporate parent to answer for conduct within the forum carried out by an alter ego subsidiary.
>
> But the rational of these cases does not support the proposition that, because the court has jurisdiction over a parent corporation or dominating individual, without more, it has jurisdiction over the alter ego corporation.  The dominated corporation does not direct and control its dominating corporate or individual alter ego.  Accordingly, it is unfair to impute to the dominated corporation the forum contacts of its alter ego. . . . [Such dominated corporations] have, as much as any other defendant, a constitutionally protected liberty interest in not being subject to the binding judgments of a forum with which [they have] established no meaningful contacts, ties, or relations.

11

*Home-Stake Prod. Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1021 (10th Cir. 1990) (internal citations and quotation marks omitted) (second alteration in original). Given that Quantum alleges that JRS or Reuvers owns USI, this rationale, which the Court finds persuasive, is particularly apt in the instant case.

**D.     Request for Discovery**

Quantum requests that the Court order additional discovery on its alter ego theory if the Court does not deny the motion based on a prima facie showing. Although Quantum offers little proof to support its jurisdictional allegations with regard to Defendants Reuvers, LES, and SDC, the Court will grant Quantum's request for jurisdictional discovery regarding those Defendants because of their close relationship with JRS. Thus, the Court will allow Quantum sixty days in which to conduct jurisdictional discovery relating to those Defendants. The Court will deny Quantum's request for discovery with regard to Defendant USI because, even assuming that Quantum can develop facts showing a parent-subsidiary relationship between JRS and USI, the alter ego theory of jurisdiction would not apply for the reasons discussed above.

**IV.   CONCLUSION**

For the foregoing reasons, the Court will grant Defendants' motion to dismiss with regard to Defendant USI. The Court will defer ruling on the portion of the motion pertaining to Defendants Reuvers, LES, and SDC pending completion of jurisdictional discovery regarding those Defendants.

An Order consistent with this Opinion will enter.


Dated:  January 23, 2014                            /s/ Gordon J. Quist
                                                    GORDON J. QUIST
                                                    UNITED STATES DISTRICT JUDGE

12